IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**

16 OCT 13 AM 9:58

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
              DEPUTY CLERK

STARNET INSURANCE COMPANY, LLOYD'S
SYNDICATE CVS 1919, LLOYD'S SYNDICATE
NO. 780 ADV, and LLOYD'S SYNDICATE NO.
4020 ARK, each for his own and not one for the
other, severally subscribing to Contract of
Insurance No. BD-CJP-555,
                    **Plaintiffs,**

-vs-                                        **Case No.  A-16-CA-664-SS**

FEDERAL INSURANCE COMPANY,
                    **Defendant.**

_____

# O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and

specifically Defendant's Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6) [#11], Plaintiff's Response [#15] in opposition, and Defendant's Reply [#17] in support.

Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the

following opinion and orders GRANTING the motion to dismiss.

Plaintiffs Starnet Insurance Company, Lloyd's Syndicate CVS 1919, Lloyd's Syndicate No.

780 ADV, and Lloyd's Syndicate No. 4020 (Plaintiffs) bring this suit against Defendant Federal

Insurance Company (Federal), claiming Federal breached its contract with non-party Border to

Border Exploration, LLC (BBX) and violated § 541.060 and § 542.058 of the Texas Insurance Code.

Compl. [#1] ¶ 17–19. Both Plaintiffs and Federal provided BBX with insurance. *Id.* ¶ 10–11.

Plaintiffs claim they are contractually and/or equitably subrogated to BBX's causes of action against

Federal. *Id.* ¶ 16.

Federal challenges Plaintiffs' Texas Insurance Code claims, arguing Plaintiffs lack standing and have failed to state viable claims. Mot. Dismiss [#11] at 1. Plaintiffs concede they do not have a claim under § 541.060 but contest the dismissal of their § 542.058 claim. Because Plaintiffs do not satisfy the definition of claimant under Chapter 542, the Court finds Plaintiffs do not have standing to assert a § 542.058 claim. Thus, the Court dismisses Plaintiffs' Texas Insurance Code § 541.060 and § 542.058 claims without prejudice.[1]

## Background

While this suit features dueling insurance companies, the underlying event centers on an oil well blowout. *See* Compl. [#1] ¶ 8. On September 1, 2014, an oil well was being drilled for BBX, the insured, when the well experienced a blowout, resulting in surface pollution to surrounding property owned by a third party as well as adjacent creeks and tributaries. *Id.* Approximately $4.056 million of the clean up expense was allocated to BBX's working interest in the well. *Id.* ¶ 12.

At the time of the blowout, BBX had overlapping insurance coverage. *Id.* ¶ 9–11. First, BBX had Cost of Well Control and Extra Expense Coverage from Plaintiffs for up to $25 million (Plaintiffs' Policy). *Id.* ¶ 11. BBX was also covered by Energy Industries Liability Insurance from Vigilant Insurance Company (Vigilant) with an incident limit of $1 million (Vigilant Policy). *Id.* ¶ 9. Finally, BBX had Commercial Excess and Umbrella Insurance from Federal (Federal Policy). *Id.* ¶ 10. The Federal Policy provided BBX with coverage for any loss that exceeded the limits of underlying insurance and listed the Vigilant Policy, but not Plaintiffs' Policy, as the underlying insurance. *Id.*

---

[1] Federal does not address Plaintiffs' breach of contract claim in the motion to dismiss. *See* Mot. Dismiss [#11] at 1. Therefore, the breach of contract claim remains.

toc

After the blowout, Plaintiffs paid BBX $2.028 million, about 50% of the cleanup expenses. *Id.* ¶ 14. Vigilant then paid BBX $1 million, the cap for a single incident under the Vigilant Policy. *Id.* Federal, however, refused to pay BBX the remaining $1.028 million, asserting its policy was excess over all other policies, including Plaintiffs' Policy. *Id.*

After Federal refused to pay, Plaintiffs paid the remainder of BBX's claim in exchange for a release and subrogation agreement. *Id.* ¶ 15. Under the theories of contractual and equitable subrogation,[2] Plaintiffs now seek reimbursement from Federal, claiming the following: Federal breached its contract with BBX; Federal violated Texas Insurance Code § 541.060 by engaging in unfair and deceptive acts or practices; and Federal violated Texas Insurance Code § 542.058(a) in failing to pay or reject BBX's claim within the statutorily required sixty days. *Id.* ¶¶ 17–19.

Federal files a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), disputing Plaintiffs' standing to assert claims under Texas Insurance Code § 541.060 and § 542.058 and arguing Plaintiffs failed to state a claim under these sections. Mot. Dismiss [#11] at 1. Plaintiffs relinquish their claim under § 541.060, acknowledging claims under Chapter 541 cannot be assigned from insured to an insurer, but do not abandon their claim under § 542.058. Pls.' Resp. [#15] at 4. Consequently, the Court dismisses Plaintiffs' claim under § 541.060 and now turns to Plaintiffs' § 542.058 claim.

---

[2] For context, "[c]ontractual (or conventional) subrogation is created by an agreement or contract that grants the right to pursue reimbursement from a third party in exchange for payment of a loss, while equitable (or legal) subrogation does not depend on contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter. In either case, the insurer stands in the shoes of the insured, obtaining only those rights held by the insured against a third party, subject to any defenses held by the third party against the insured." *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.,* 236 S.W.3d 765, 774 (Tex. 2007) (internal citations omitted).

## Analysis

### I.    Legal Standard

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court considers the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001). Specifically, a motion under Rule 12(b)(1) asks a court to dismiss a case for "lack of subject matter jurisdiction." FED. R. CIV. P. 12(b)(1). As federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by federal statute, a party seeking to invoke the jurisdiction of a federal court must prove jurisdiction is proper. *See Le Mieux Bros. v. Tremont Lumber Co.,* 140 F.2d 387, 389 (5th Cir. 1944) (noting jurisdiction must affirmatively appear and evaluating whether a plaintiff established jurisdiction). In evaluating a challenge to subject matter jurisdiction, the Court is free to weigh the evidence and resolve factual disputes so it may be satisfied jurisdiction is proper. *See Montez v. Dep't of Navy,* 392 F.3d 147, 149 (5th Cir. 2004) (citing *Land v. Dollar,* 300 U.S. 731, 735 & n.4 (1947)).

In conducting its inquiry, the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Id.* The Court must take the allegations of the complaint as true and draw all inferences in Plaintiff's favor. *Saraw P'ship v. United States,* 67 F.3d 567, 569 (5th Cir. 1995); *Garcia v. United States,* 776 F.2d 116, 117 (5th Cir. 1985). Dismissal is warranted if Plaintiff's allegations, together with any undisputed facts, do not establish the Court has subject matter jurisdiction. *See Saraw,* 67 F.3d at 569 (affirming dismissal where plaintiff could not prove any facts in support of its claim).

-4-

## II.   Application

The Fifth Circuit strictly enforces the standing requirement as an essential element of subject matter jurisdiction. *See Doe v. Tangipahoa Parish Sch. Bd.,* 494 F.3d 494, 498 (5th Cir. 2007) (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541–42 (1986)). In this case, Federal does not appear to deny Plaintiffs have standing within federal courts' Article III jurisdiction.[3] *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (explaining the nature of Article III standing). Instead, it seems Federal contends Plaintiffs lack statutory standing or prudential standing because "statutory remedies are personal and punitive under the Insurance Code."[4] Mot. Dismiss [#11] at 3.

A lack of statutory standing can be confused with Article III standing but the two concepts are distinct. *See Markle Interests, L.L.C. v. United States Fish & Wildlife Serv.,* 827 F.3d 452, 464 & n.11 (5th Cir. 2016) (examining both Article III standing and prudential standing); *Hartig Drug Co. Inc. v. Senju Pharm. Co.,* No. 15-3289, 2016 WL 4651381, at *5 (3d Cir. Sept. 7, 2016) (comparing Article III standing to statutory standing in the antitrust context). Article III standing is the "irreducible constitutional minimum" while statutory standing refers to whether a valid cause of action exists under the statute at issue. *See Markle Interests, L.L.C.,* 827 F.3d at 462–64 (finding Plaintiffs established Article III standing and Defendant waived the statutory standing contest);

---

[3] Federal provided the Court with no briefing on the relevant standard for evaluating its motion to dismiss under 12(b)(1) and offered only three sentences concerning the lack of standing argument in its initial Motion to Dismiss. *See* Def.'s Mot. Dismiss [#11] at 3.

[4] This Court recognizes both prudential standing and statutory standing. The United States Supreme Court recently framed the inquiry of whether a party has a cause of action under a statute as statutory standing. *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S. Ct. 1377, 1387 & n.4 (2014). The Supreme Court observed the term statutory standing is "an improvement over the language of 'prudential standing,' since it correctly places the focus on the statute." *Id.* By contrast, the Fifth Circuit continues to also use prudential standing. *E.g., Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.,* 778 F.3d 502, 506 (5th Cir. 2015).

*Janvey v. Brown*, 767 F.3d 430, 437 (5th Cir. 2014) (reviewing a claim for lack of standing under the Texas Uniform Fraudulent Transfer Act as a question of statutory standing).

To prove Article III standing, a plaintiff invoking federal jurisdiction bears the burden of establishing three elements: (1) the plaintiff suffered an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) the injury will likely be redressed by a favorable decision. *Lujan*, 504 U.S. at 560. By comparison, whether a plaintiff has statutory standing is an issue requiring traditional tools of statutory interpretation to determine if a legislatively conferred cause of action encompasses that particular plaintiff's claim. *See, e.g., Lexmark Int'l, Inc.*, 134 S.Ct. 1377, 1387 (2014); *Markle Interests, L.L.C.*, 827 F.3d at 464 n.11; *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009).

When a court in the Fifth Circuit interprets a Texas statute, the court "follow[s] the same rules of construction that a Texas court would apply—and under Texas law the starting point of our analysis is the plain language of the statute." *Wright v. Ford Motor Co.*, 508 F.3d 263, 269 (5th Cir. 2007). Thus, this Court begins its analysis by turning to § 542.058(a) of the Texas Insurance Code, which states:

> Except as otherwise provided, if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060.

Section 542.051 explicitly defines the terms "claim" and "claimant" as follows:

> (2) "Claim" means a first-party claim that:
>
> (A) is made by an insured or policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract; and
>
> (B) must be paid by the insurer directly to the insured or beneficiary.

(3) "Claimant" means a person making a claim.

With these definitions, the Texas Legislature explicitly restricted § 542.058 coverage to first-party claims. *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 25 (Tex. 2007) (reviewing the legislative history of Chapter 542 and finding legislators intended to limit the statute's coverage to first-party claims and exclude third-party claims).

Distinguishing between a first-party claim and a third-party claim, the Texas Supreme Court explained the key difference between the concepts is "the claimant's relationship to the loss" and first-party claims are limited to those "personal to the insured." *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 674–75 (Tex. 2008). The Texas Supreme Court elaborated, "[A] first-party claim is stated when an insured seeks recovery for the insured's own loss, whereas a third-party claim is stated when an insured seeks coverage for injuries to a third party." *Id.* (alteration in original) (quotations and citations omitted).

Applying these concepts, the Texas Supreme Court found a third-party claim had been asserted where an insured refinery sought coverage from an excess insurer for a wrongful death claim brought on behalf of a worker at the refinery. *Id.* Because the insured sought coverage for injuries sustained by a third party, the Court concluded the insured "present[ed] a classic third-party claim." *id.* In contrast, in *Lamar Homes, Inc.*, the Texas Supreme Court concluded a defense claim, where an insured claims the insurer breached its duty to defend, "is a first party-claim because it related solely to the insured's own loss." 242 S.W.3d at 17 (explaining the costs of defending a claim "belong[] only to the insured and [are] no way derivative of any loss suffered by a third party").

Here, Plaintiffs exhibit a third-party claim, not a first-party claim. Plaintiffs seek reimbursement for indemnifying the insured, which paid for the injuries of property owners whose

-7-

property was polluted by the blowout. Even placing Plaintiffs in the shoes of the insured through subrogation, Plaintiffs still seek indemnification for expenses concerning injuries to third parties. *See Evanston Ins. Co.*, 256 S.W.3d at 674–75 (finding an insured who sought coverage for a worker's wrongful death claim against it stated a classic third-party claim). Because Plaintiffs are not making a first-party claim, they do not meet the definition of claimant and do not have standing under § 542.058.

Plaintiffs cite to *Berkley Reg'l Ins. Co. v. Phila. Indem. Ins. Co.,* No. A-10-CA-362, 2011 WL 9879170 (W.D. Tex. 2011) (*Berkley I*) to save their Chapter 542 claim. However, both parties have overlooked or misunderstood the subsequent history in that case. *See Berkley Reg'l Ins. Co. v. Phila. Indem. Ins. Co.,* No. A-10-CA-362, 2011 WL 13112580 (W.D. Tex. 2011) (*Berkley II*), *rev'd on other grounds*, 690 F.3d 342 (5th Cir. 2012). *Berkley I* and *Berkley II* concern the same underlying case. 2011 WL 13112580, at *1 (referencing the Court's earlier order). There, the insured also had overlapping coverage. 2011 WL 9879170, at *2–3. Following the insured's loss of a tort lawsuit, the plaintiff-insurance company paid the outstanding balance owed to the judgment creditor on the insured's behalf. *Id.* at *2–3. Like Plaintiffs here, the plaintiff-insurance company in *Berkley I* and *II* sought reimbursement from the insured's excess insurer. *Id.* at *3.[5]

In *Berkley I*, the Court declined to address the validity of the plaintiff-insurance company's Chapter 542 Insurance Code claim and subsequently invited additional briefing on the issue. 2011 WL 9879170, at*9; *Berkley II,* 2011 WL 13112580, at *1.

---

[5] The plaintiff-insurance company in *Berkley II* conceded it could not bring a Chapter 542 claim based on its role as the insured's subrogee but claimed it could bring a Chapter 542 claim as the subrogee of the judgment creditor as an unnamed third-party beneficiary to the excess insurance policy. 2011 WL 13112580, at *6.

After examining the briefing, the Court held in *Berkley II* the plaintiff-insurance company could not bring a claim under Chapter 542 because it was not making a first-party claim. *Id.* at *6–7. None of the plaintiff-insurance company's claims were "being made by an insured or policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract, as required by the Texas Insurance Code § 542.051(2)." *Id.* at *7 (quotation omitted).

Just as in *Berkley II*, Plaintiffs here do not satisfy the definition of claimant under Chapter 542 because they are not making a claim as defined by the statute; that is, here and in *Berkely II*, it is not "the insured's own loss which is being compensated, but rather the injury to a third party." *See id.* at *6. Consequently, Plaintiffs do not have statutory standing under Chapter 542. Plaintiffs' § 542.058 claim fails for lack of subject matter jurisdiction and should be dismissed.

Because the Court dismisses the disputed claims for lack of subject-matter jurisdiction, the Court need not evaluate the same claims under Federal Rule of Civil Procedure 12(b)(6).

### Conclusion

For all the foregoing reasons, the Court GRANTS Federal's Motion to Dismiss. Plaintiffs' claim under Texas Insurance Code § 541.060 is DISMISSED WITHOUT PREJUDICE because Plaintiffs abandoned this claim. Additionally, Plaintiffs' claim under Texas Insurance Code § 542.058 must be DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

Accordingly:

IT IS ORDERED that Defendant Federal Insurance Company's Motion to Dismiss [#11] is GRANTED; and

IT IS FINALLY ORDERED that the claims brought by Plaintiffs Starnet Insurance Company, Lloyd's Syndicate CVS 1919, Lloyd's Syndicate No. 780 ADV, and Lloyd's

-9-

Syndicate No. 4020 under Texas Insurance Code § 541.060 and § 542.058 in this case are

DISMISSED WITHOUT PREJUDICE.

SIGNED this the _12th_ day of October 2016.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

-10-